AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Southern District of California

**FILED**

**AUG 26 2019**

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Phone Number (562) 333-5273, "IMEI" 0149400005548533 ("Account 3"), as more particularly described in Attachment A-3

Case No.

**19MJ3602**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A-3

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B-3

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846, 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Vincenzo L. Zoni
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/26/19

_____
*Judge's signature*

City and state:  San Diego, CA

Honorable Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-3

### *Item to be Searched*

This warrant applies to records and information associated with the cellular telephone assigned telephone number (562) 333-5273, with IMEI 0149400005548533 ("Account 3"), that are stored at premises controlled by T-Mobile, headquartered at 4 Sylvan Way, Parsippany, NJ 07054

1

## ATTACHMENT B-3

2

### *Items to be Seized*

3      The officer executing the warrant shall permit T-Mobile, as custodian of the

4 computer files described in Section II below, to locate the files and copy them onto

5 removable electronic storage media and deliver the same to the officer.

6 **I.    Items to be provided by the Provider**

7      The following information about the customers or subscribers of **Account 3**:

8         i.   Names (including subscriber names, user names, and screen names);

9         ii.  Addresses (including mailing addresses, residential addresses, business

10             addresses, and e-mail addresses);

11        iii. Local and long distance telephone connection records;

12        iv.  Records of session times and durations, and the temporarily assigned

13             network addresses (such as Internet Protocol ("IP") addresses)

14             associated with those sessions;

15        v.   Length of service (including start date) and types of service utilized;

16        vi.  Telephone or instrument numbers (including MAC addresses,

17             Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

18             Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile

19             Identification Number ("MIN"), Subscriber Identity Modules ("SIM"),

20             Mobile Subscriber Integrated Services Digital Network Number

21             ("MSISDN"); International Mobile Subscriber Identity Identifiers

22             ("IMSI"), or International Mobile Equipment Identities ("IMEI");

23        vii. Other subscriber numbers or identities (including the registration

24             Internet Protocol ("IP") address); and

25        viii. Means and source of payment for such service (including any credit

26             card or bank account number) and billing records.

27

28

8

1

2

3

    b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

4

5

6

7

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

8

9

        ii. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data transactions;

10

11

        iii. All data available for the cell-site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data transactions;

12

13

        iv. All e911 (or "GPS data") in the custody of the Provider for the Account;

14

15

16

        v. All available Timing Advance Reports, currently known as True Call, to include cell site, sector, and distance from tower, IP session and Data; and

17

        vi. All available Mobile Data Session and IPv6 reports.

18

## II.    Information to be Seized by the Government

19

20

21

22

All information described in Section I that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960, 963, 846, and 841 and involving Hector MARTINEZ-ROBOS during the period of December 8, 2018 through January 8, 2019.

23

24

25

26

27

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant

28

9

1    **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

2       I, Vincenzo L. Zoni, having been duly sworn, do hereby state that the following is

3    true and correct to my knowledge and belief.

4                                    **INTRODUCTION**

5       1.    I make this affidavit in support of an application for information associated

6    with the following:

7           a. phone number (323) 702-1965, with International Mobile Equipment Identity

8               ("IMEI") 089466522504350072 ("Account 1"), as more particularly

9               described in Attachment A-1;

10          b. phone number (562) 202-2712, with IMEI 990008941610417 ("Account 2"),

11              as more particularly described in Attachment A-2; and

12          c. phone number (562) 333-5273, with IMEI 0149400005548533 ("Account

13              3"), as more particularly described in Attachment A-3;

14   (collectively the "Subject Accounts"), including subscriber information, telephone toll

15   data, and cell-site geo-location information for the period of December 8, 2018 up to and

16   including January 8, 2019. As set forth below, there is probable cause that these records

17   and information constitute evidence of violations of federal law, namely, Title 21, United

18   States Code Sections 841, 846, 952, 960, and 963, as more particularly described in

19   Attachments B-1, B-2 and B-3. This affidavit and application are sought pursuant to Rule

20   41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to

21   providers of electronic communication services.

22      2.    The Subject Accounts are currently in the possession of the following wireless

23   service providers (the "Service Providers"):

24          a. Account 1 is in the possession of Sprint, headquartered at 6480 Sprint

25              Parkway, Overland Park, KS 66251;

26          b. Account 2 is in the possession of Verizon Wireless, headquartered at 180

27              Washington Valley Road, Bedminster, NJ 07921;

28          c. Account 3 is in possession of T-Mobile, 4 Sylvan Way, Parsippany, NJ 07054.

3.      This affidavit is made in support of an application for search warrants under 18 U.S.C. § 2703(c)(1)(A) to require the Service Providers to disclose to the government copies of the information further described in Section I of Attachments B-1, B-2 and B-3. Upon receipt of that information, government-authorized persons will review the information to locate items described in Section II of Attachments B-1, B-2 and B-3.

4.      This Court has jurisdiction to issue this warrant because it is "a district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A).

## TRAINING AND EXPERIENCE

5.      I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") formerly known as the ICE Office of Investigations ("ICE-OI"). I have been employed by ICE OI / HSI as a Special Agent since the agency was first created on March 1, 2003. From 2002 to 2003, I was a Special Agent with a predecessor agency, the Immigration and Naturalization Service. Prior to becoming a Special Agent, I served as Border Patrol Agent with the United States Border Patrol, from 1995 to 2002.

6.      As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border.

7.      I have completed the USBP Basic Training Course at the Federal Law Enforcement Training Center located in Glynco, Georgia, as well as other follow-up courses required by ICE.

8.      Since June of 2016, I have been assigned to the HSI Special Agent in Charge - Investigative Services Group as a liaison between HSI and the United States Attorney's Office for the Southern District of California.

9.      Prior to my current assignment, I was assigned to the Deputy Special Agent in Charge San Ysidro, located in San Ysidro, California. My specific assignment was to

1 the Narcotics Response Group. During my tenure, my duties included investigating the

2 illicit trafficking of controlled substances into the United States. During my assignment to

3 the Narcotics Response Group, I participated in the investigation of various drug-

4 trafficking organizations involved in the acquisition, importation, transportation, and

5 distribution of controlled substances into and through the Southern District of

6 California. Because the nature of my ongoing work requires me to keep apprised of recent

7 trends and developments involved in the investigations of drug traffickers, I regularly

8 communicate with agents from the Drug Enforcement Administration, Customs and

9 Border Protection ("CBP"), and other local and state law enforcement officers operating

10 within the Southern District of California.

11    10.    The facts and conclusions set forth in this affidavit are based on my own

12 personal knowledge; knowledge obtained from other individuals during my participation

13 in this investigation; my review of documents and records related to this investigation;

14 communications with others who have personal knowledge of the events, details, and

15 circumstances described herein; and information gained through my training, experience,

16 and communications with colleagues. Because this affidavit is submitted for the limited

17 purpose of establishing probable cause in support of the application for a search warrant,

18 it does not set forth each and every fact that I or others have learned during the course of

19 this investigation. Dates, times, and amounts are approximate.

20                    **FACTS IN SUPPORT OF PROBABLE CAUSE**

21    11.    According to a report prepared by CBP Officer Manis, at about 9:30 p.m. on

22 January 7, 2019, Officer Manis was conducting inspections in the pre-primary inspection

23 area at the San Ysidro POE with a K-9 Unit. At that time, the K-9 Unit alerted to the spare

24 tire of a grey Kia Sorento bearing California license plate 6TCL582. Officer Manis

25 informed fellow CBP Officer Garcia of the alert.

26    12.    Per Officer Garcia's report, Officer Garcia came over to the Kia Sorento and

27 inspected the spare tire, which was located under the vehicle. Officer Garcia felt the tire,

28 which felt solid. Officer Garcia then approached the driver, Hector MARTINEZ-ROBOS,

                                              3

1  who said that he was going to Los Angeles with his passenger, Rosa Isela ACUNA, and
2  ACUNA's child (who was also in the car). MARTINEZ-ROBOS told Officer Garcia that
3  he was coming from Tijuana, and he twice said that he had nothing to declare. At this point,
4  Officer Garcia had MARTINEZ-ROBOS get out of the car; he handcuffed MARTINEZ-
5  ROBOS and escorted him to the security office. (The reports prepared by the CBP Officers
6  do not state what ACUNA and her child did at this point, but I am aware from my own
7  training and experience that when a vehicle is sent to secondary inspection, CBP Officers
8  will first remove the occupants and have them wait in an area like the security office at the
9  Port of Entry.)

10     13.    The Kia Sorrento was sent to secondary inspection and scanned through the
11  "Z-Portal" X-Ray Machine. Per the report of CBP Officer Santos, the scans showed
12  anomalies in the spare tire and in the rear quarter panels of the vehicle.

13     14.    Per CBP Officer Nicklen's report, Officer Nicklen then removed a package
14  from the rear passenger-side quarter panel of the Kia Sorento; the contents of the package
15  field-tested as positive for cocaine. In total, Officer Nicklen recovered four packages from
16  the quarter panel and 21 from the spare tire; the 25 total packages had a gross weight of
17  28.68 kilograms.

18     15.    Per his report, after discovering the first package in the rear passenger-side
19  quarter panel, Officer Nicklen placed MARTINEZ-ROBOS and ACUNA under arrest for
20  the importation of controlled substances. Officer Nicklen also seized the Kia Sorento and
21  the cocaine. Shortly thereafter, I seized the personal effects belonging to MARTINEZ-
22  ROBOS and ACUNA, including the phones associated with the Accounts. Specifically,
23  the phones associated with Account 1 and Account 2 were seized from ACUNA, and the
24  phone associated with Account 3 was seized from MARTINEZ-ROBOS.

25     16.    Following their arrests, both MARTINEZ-ROBOS and ACUNA received
26  their *Miranda* rights from HSI Special Agent Raul Rodriguez. Per Special Agent
27  Rodriguez's report, both MARTINEZ-ROBOS and ACUNA claimed not to know about
28  the presence of cocaine in the Kia Sorento.

4

17. Per my investigation, I understand that MARTINEZ-ROBOS was the registered owner of the Kia Sorento when he and ACUNA entered the United States on January 7, 2019. The car was registered in MARTINEZ-ROBOS's name on October 24, 2018.

18. I have also reviewed information about the border-crossing activity of ACUNA, MARTINEZ-ROBOS, and the Kia Sorrento. This information indicates the following:

   a. Prior to entering the United States on January 7, the Kia Sorento previously entered the United States on October 23, 2018. Before that, the Kia Sorento had not entered the United Stance since March 2013.

   b. MARTINEZ-ROBOS was in the Kia Sorento when it entered the United States on October 23, 2018. After that date, he entered the United States, in other vehicles, on December 9, December 16, December 26, and December 31, 2018.

   c. ACUNA was also in the Kia Sorento when it entered the United States on October 23, 2018. After that date, she entered the United States, in other vehicles, on November 1, November 7, November 13, November 18, November 30, December 3, December 8, December 9, December 16, December 26, and December 31, 2018.

19. I further note that ACUNA and MARTINEZ-ROBOS were together when they entered the United States on December 9, 16, 26, and 31, 2018. More specifically, they entered the United States together at the following times on these dates:

   i. December 9 – 11:22 p.m.

   ii. December 16 – 11:20 p.m.

   iii. December 26 – 11:17 p.m.

   iv. December 31 – 3:05 p.m.

20. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in

5

1 near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico
2 to the United States by hiding the drugs in hidden compartments of cars, and in non-factory
3 compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use).
4 Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs
5 undetected. I am also aware that such individuals will sometimes try to generate a history
6 of crossings to show that driving through a POE is ordinary behavior for them. When they
7 arrive in the United States, smugglers will take the drugs to a discreet location to transfer
8 them to other people involved in the distribution chain, who can then send the drugs to
9 other locations for downstream distribution. Here, I anticipate that in light of the drugs in
10 the Kia Sorento, probable cause exists to believe MARTINEZ-ROBOS and ACUNA were
11 functioning in this way, and that the information in the Subject Accounts is relevant to that
12 possibility.

13     21.     Based upon my training and experience as a Special Agent, and consultations
14 with law enforcement officers experienced in narcotics trafficking investigations, and all
15 the facts and opinions set forth in this affidavit, I further submit the following:

16     a. Drug smugglers use cellular telephones because the devices are mobile
17         and provide instant access to telephone calls, texts, internet, application-
18         based communications platforms (*e.g.*, WhatsApp), and voice messages;
19     b. Drug smugglers use cellular telephones because they are able to actively
20         monitor the progress of the illegal cargo while the conveyance is in transit;
21     c. Drug smugglers and their accomplices use cellular telephones because the
22         phones help them arrange for the delivery of cargo at predetermined locations
23         and monitor / plan for arrival times;
24     d. Drug smugglers use cellular telephones to direct couriers to synchronize drop
25         off and pick up times of the illegal cargo;
26     e. Drug smugglers use cellular telephones to notify or warn accomplices about
27         law-enforcement activity, such as the presence and posture of marked and
28         perceived unmarked patrol vehicles, or the operational status of border

6

checkpoints and border crossings;

f. The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

22.    Given the facts surrounding the arrest of MARTINEZ-ROBOS and ACUNA, my review of their border-crossing activity during the four weeks prior to their arrests, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe MARTINEZ-ROBOS and ACUNA used the phones associated with the Accounts, and that information relevant to their smuggling activities will be found in a review of the Accounts. Based on the foregoing and in light of my training and experience, I further submit that there is probable cause to authorize a review of the Accounts for the time period that MARTINEZ-ROBOS and ACUNA crossed the border together, *i.e.*, from December 8, 2018, to January 8, 2019.

23.    Based on my training and experience, and my consultation with other law enforcement officers, I am aware that the Service Providers routinely collect and store data for the electronic communication accounts to which they and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii)

1  detailed information concerning subscribers' outgoing direct calls, text message, and SMS

2  messages; and (iv) detailed information concerning cell-site geo-location data.

3       24.    In particular, I know that cell phones connect to a provider's network through

4  cell towers or cell sites. The particular tower or site may change as a phone moves from

5  one location to another. Providers automatically record and retain this connection data as

6  part of the subject account. Records and data identifying the towers or sites to which a

7  phone connected therefore tend to identify the phone's and phone user's location at

8  particular times.

9       25.    In my training and experience, this information may constitute evidence of the

10  crimes under investigation because the information can be used to identify the user or users

11  of the phones associated with the Subject Accounts and their locations at particular points

12  in time relevant to the commission of the offense(s), and may assist in the identification of

13  co-conspirators.

14  **PRIOR ATTEMPTS TO OBTAIN THIS INFORMATION**

15       26.    The United States is unaware at this time of other attempts by the U.S.

16  government to obtain this data by other means.

17  **CONCLUSION**

18       27.    Based on the foregoing, I request that the Court issue the proposed search

19  warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20       28.    Based upon my training and experience, consultation with other law

21  enforcement officers experienced in extortion investigations, and all the facts and opinions

22  set forth in this Affidavit, there is probable cause to believe that the Subject Accounts to

23  be seized, as set forth above and in Section I of Attachments B-1, B-2 and B-3, will be

24  found in the location described in Attachments A-1, A-2 and A-3, and will contain evidence

25  of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963. Therefore, I respectfully request

26  that the Court issue a warrant authorizing me, or another federal law enforcement agent, to

27  order the Service Providers to search their corporate records for the Accounts and to order

28

8

1   the Service Providers to deliver the Accounts listed in Section I of Attachments B-1, B-2

2   and B-3.

3
                                            _____
                                            Vincenzo L. Zoni, Special Agent
4                                           Homeland Security Investigations

5
    Subscribed and sworn to before me
6   this  2 6  day of August, 2019.

7
                                            _____
8                                           Hon. Bernard G. Skomal
                                            UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            9